UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARILYN G.D.,**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　Defendant. | Civ. No. 21-00494 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　Plaintiff Marilyn G.D. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") issued a decision, concluding that Marilyn G.D. was not disabled from January 16, 2018, the onset date of the alleged disability, through March 31, 2020, the date of decision.

　　The issue presented is whether the ALJ's decision is supported by substantial evidence. For the reasons stated below, the decision is **REVERSED AND REMANDED**.

**I.　BACKGROUND**[1]

　　Marilyn G.D. applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on May 24, 2018, and for SSI pursuant to Section 1614(a)(3)(A) of the SSA on June 6, 2018, alleging disability beginning

---

[1]　Citations to the record are abbreviated as follows:

　　DE = docket entry

　　AR. _ = Administrative Record (DE 9) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 9 attachments)

　　Pl. Br. = Marilyn G.D's Moving Brief (DE 12)

on January 16, 2018. (AR. 15.) Her application was denied initially then upon reconsideration. (AR. 15, 118-123, 130-132.) On October 26, 2018, Marilyn G.D. filed a request for a hearing before an ALJ to review her application de novo. (AR. 133-135.) A hearing was held on January 8, 2020 before ALJ Richard West, who issued a decision on March 31, 2020. ALJ West denied disability at step five, ruling that Marilyn G.D. is capable of performing light work that accommodates her limitations and exists in significant numbers in the national economy. (AR. 24.)

Marilyn G.D. requested Appeals Council Review of ALJ West's decision, but her request was denied on December 3, 2020. This denial rendered ALJ West's decision the final decision of the Commissioner. (AR. 1–6.) Marilyn G.D. now appeals, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits and for SSI for disability, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**RFC and Step 4:** Determine the claimant's "residual functional capacity" ("RFC"), meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

On appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such

3

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

**B. The ALJ's Decision**

ALJ West undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

ALJ West concluded that Marilyn G.D. has not engaged in substantial gainful activity since January 16, 2018, the alleged onset date. (AR. 17.)

4

**Step 2**

The ALJ found that Marilyn G.D. has the following severe impairments: degenerative disc disease, seronegative rheumatoid arthritis, thyroid disorder, hypertension, sarcoidosis, and obesity. (AR. 17.) As to glaucoma, however, the ALJ concluded that the record did not "establish a visual impairment that imposed more than a slight vocational limitation on the claimant's ability to function," and that it therefore is not "severe" under the relevant regulations. (AR. 17.) Because the ALJ found that Marilyn G.D. suffered from several severe impairments, he proceeded to step three.

**Step 3**

With respect to her established severe impairments, the ALJ determined that Marilyn G.D. did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR. 17.) The ALJ paid particular attention to Listings 1.04 (Disorders of the Spine), 14.09 (Inflammatory Arthritis), 9.0 (Endocrine Disorders), as well as Section 14 (Immune System Disorders) of the Listings. The ALJ also considered whether obesity, in combination with Marilyn G.D.'s other impairments, met or equaled any of the listed impairments.

First, ALJ West declined to find that Marilyn G.D. met the criteria for Listing 1.04 because the record failed "to demonstrate the existence of a herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or the requirements of A, B, or C of" Listing 1.04. (AR. 18.)

Second, ALJ West determined that Marilyn G.D.'s seronegative rheumatoid arthritis did not meet the criteria of Listing 14.0 because it was "not documented as described in section 14.00D6, with one of the requirements in subsections A through D." (AR. 18.)

Third, the ALJ found that Listing 9.0 was not met because the record did not establish that Marilyn G.D's thyroid disorder "has imposed serious long

5

term complications in any of the other body systems found in Section 4.00, 5.00, 11.00, and 12.00." (AR. 18.)

Fourth, ALJ West stated that he evaluated Marilyn G.D's hypertension under "all of the cardiac listings in section 4.00," and found that "none of those listings" were met or equaled. (AR. 18.)

Fifth, the ALJ noted that although there is no listing for obesity, pursuant to Social Security Ruling ("SSR") 19-2p, "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment." (AR. 18.) The ALJ stated that he "fully considered obesity in the context of the overall record evidence in making" his decision. (AR. 18.)

## RFC and Step 4

ALJ West defined Marilyn G.D.'s RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform all postural functions occasionally. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and dust, fumes and similar occupational irritants. She must avoid dangerous machinery and unprotected heights; and she can understand, remember and carry out simple instructions.

(AR. 19.)

ALJ West began his RFC analysis by laying out the prescribed two-step process. First, he was required to determine whether Marilyn G.D. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that would reasonably be expected to produce [Marilyn G.D.'s] pain or other symptoms." (AR. 19.) Second, the ALJ was required to "evaluate the intensity, persistence, and limiting effects of [Marilyn G.D.'s] symptoms to determine the extent to which they limit [her] work-related activities." (AR. 19.) This evaluation required him to look to objective medical evidence, or to the entire case record, where objective medical evidence does not substantiate Marilyn

G.D.'s statements about "the intensity, persistence, and limiting effects of pain or other symptoms." (AR. 21.)

ALJ West concluded that Marilyn G.D.'s "statements about the intensity, persistence, and limiting effects of … [her] symptoms … are not entirely consistent with the medical evidence and other evidence in the record." (AR. 21.)

Marilyn G.D. testified that she started having problems with her back in 2012, resulting in back surgery that same year. (AR. 19.) She also testified that she is "limited in doing things," "always in pain," and that her pain pills cause her to feel "tired and sluggish." (AR. 20.) The ALJ acknowledged that the record establishes that Marilyn G.D. was diagnosed with seronegative rheumatoid arthritis, degenerative joint disease of the spine, tendonitis of the right shoulder, and primary arthritis of the left knee, resulting in symptoms such as leg pain, numbness and tingling, and pain in her knees, fingers, wrists and elbows. (AR. 21.) With respect to Marilyn G.D.'s thyroid disorder, the ALJ notes that Marilyn G.D. had "experienced palpitations," resulting in emergency room visits in January 2018 and October 2019." (AR. 21.)

Notwithstanding Marilyn G.D.'s symptoms, the ALJ cited portions of the medical record which tended to mitigate the severity of her condition. After her spinal surgery in 2012, she returned to work and continued to work until January 2018. (AR. 20.) Moreover, a September 2018 consultative examination "failed to show any marked functional limitation," with Marilyn G.D. exhibiting "a normal range of motion in the lumbar spine, with no evidence of motor, strength or sensory deficits in the bilateral extremities with the exception of a decreased range of motion in both knees." (AR. 20.) During this same examination, Marilyn G.D. "walked with a normal unassisted gait and station and had no difficulty performing transfers." (AR. 20.) The ALJ additionally noted that despite Marilyn G.D.'s complaints of "intermittent achy lower back pain," from 2017 through 2019 Dr. Xiong only prescribed oral analgesics, as opposed to more aggressive treatments such as steroid epidural injections, physical therapy, or additional surgical intervention. (AR. 20.)

With respect to Marilyn G.D.'s musculoskeletal complaints, during a July 2018 examination, while she exhibited "a diminished range of motion in the upper extremities, hip and ankles," the report also noted "no evidence of musculoskeletal deformity or sensory deficit." (AR. 21.) By September 2018, Marilyn G.D. displayed no "marked functional limitation," "walked with a normal gait and station," had "a full range of motion throughout with the exception of the knee and upper flexion of the cervical spine." (AR. 21.) Concerning Marilyn G.D.'s thyroid disorder, ALJ West stated that after she reported less frequent palpitations during an October 4, 2019 examination, "[s]ubsequent progress notes through November 2019, failed to note any additional complaints, secondary to thyroid disease." (AR. 22.) The ALJ noted, however, medical evidence that "hypertension was not well controlled" and there was "a history of non-compliance to prescribed treatment." (AR. 22.)

In assessing Marilyn G.D.'s RFC, the ALJ found the "opinion of DDS persuasive," as those opinions were consistent with the medical record. (AR. 23.) The ALJ also noted that "[t]here are no medical source statements" concluding that Marilyn G.D. could not work. (AR. 23.)

Based on these findings, at step four, ALJ West concluded that Marilyn G.D. was unable to perform her past work as an accounts receivable clerk or a billing clerk. (AR. 23.)

### Step 5

At step five, ALJ West concluded that, "there are jobs that exist in significant numbers in the national economy that that [Marilyn G.D.] can perform." (AR. 23.) The ALJ did not use the service of a vocational expert ("VE") in conducting his analysis. Rather, he employed section 204.00 of the Medical-Vocational Guidelines (or, the "GRIDS") and SSR 85-15, finding that Marilyn G.D.'s additional limitations "have little or no effect on the occupational base of unskilled work." (AR. 24.)

Accordingly, the ALJ concluded that Marilyn G.D. was not disabled from January 16, 2018, the onset date of the alleged disability, through March 31, 2020, the date of decision. (AR. 24.)

### III.  DISCUSSION

#### A. The ALJ's Step Two Evaluation

ALJ West determined that Marilyn G.D. suffered from the following severe impairments: degenerative disc disease, seronegative rheumatoid arthritis, thyroid disorder, hypertension, sarcoidosis, and obesity. (AR. 17.) Marilyn G.D. argues that the ALJ erred at step two because he failed "to mention [her] mental impairments as either severe or nonsevere," even though these mental impairments are in the record "and would erode plaintiff's ability to perform substantial gainful activity." (Pl. Br. at 16-17.)

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Alternatively, an impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The burden of establishing a medically determinable impairment rests with the plaintiff. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). For an impairment to be medically determinable, it must be an "anatomical, physiological, or psychological abnormalit[y] that can be show by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.*

A claimant's statement of symptoms, a diagnosis that is not supported by objective evidence, or a medical opinion not supported by objective evidence, does not establish the existence of an impairment. 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921; SSR 96-4p, 1996 WL 374187 at *1. The Third Circuit has stated that step two is "*de minimis* screening device to dispose of groundless claims." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)). Nevertheless, "[t]he Commissioner's denial at step two, like one made at any other step in the

9

sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *Id.* (citation omitted).

As an initial matter, the Court notes that Marilyn G.D. did not allege any mental impairments when applying for DBI and SSI. Indeed, in her initial disability determination, dated September 27, 2018, the examiner noted that Marilyn G.D. did not suffer from either anxiety or depression, and suffered from "no attentional deficits." (AR. 71, 85). Similarly, in Marilyn G.D.'s reconsideration disability determination explanation (finding her "Not Disabled" with the same findings as in the initial explanation), she failed to allege any "new physical or mental conditions," only reporting changes to her *physical impairments.* (AR. 93, 105.) And notably, in Marilyn G.D.'s counsel's May 23, 2020 letter to the Appeals Council, with respect to ALJ West's decision, Marilyn G.D. took the position "that her multiple physical impairments, *inter alia,* severe rheumatoid arthritis, lumbar spine stenosis, and sarcoidosis, are supported by the medical records and the findings of the State Agency Physician"—with no mention of alleged mental impairments. (AR. 270-276.)

On the other hand, the ALJ failed at step two to evaluate whether Marilyn G.D. had a medically determinable mental impairment. The medical record does not compel such a determination by any means. Dr. Xiong's medical reports from—(1) July 6, 2016 to February 27, 2017; and (2) May 23, 2018 through November 27, 2019, state that Marilyn G.D. did not suffer from anxiety or depression, describe her as being "alert and oriented," "cooperative," with "appropriate mood & affect," and fail to mention other mental impairments. (AR. 305-314; 495-523.) Similarly, Dr. Codella's reports, from January 12, 2017 through September 23, 2019, with the exception of one report, are consistent with Dr. Xiong's findings. (*See, e.g.*, AR. 335, 337, 347.)[2]

There are instances in the record of Marilyn G.D. self-reporting symptoms of stress. Marilyn G.D.'s ROS was "positive for feelings of stress," in

---

[2]  I specifically refer to Dr. Codella's January 12, 2017, January 22, 2018, March 27, 2018, June 5, 2018, June 4, 2019, and September 23, 2019 reports.

10

medical reports from September 30, 2019 through November 15, 2019, but otherwise reported negative for depression or suicidal thoughts, and was described as both "alert and oriented" and having an "appropriate affect and demeanor." (AR. 429, 433, 437, 445, 449, 453.) Further, Marilyn G.D.'s St. Barnabas Medical Center Emergency Department record, dated January 16, 2018, stated that she suffered from "emotional stress," with the Emergency Department suggesting biofeedback, yoga, meditation, and physical activity to reduce stress and anxiety. (AR. 317, 322.) Only one medical examination provides a positive ROS for depression (Dr. Codella's April 30, 2018 report), with that report otherwise describing Marilyn G.D. as: (1) "alert and oriented"; (2) "appropriate affect and demeanor"; and (3) "negative for depression or suicidal thoughts." Accordingly, Dr. Codella recommended that Marilyn G.D. "increase physical activity, avoid substance abuse, and monitor for change in signs or symptoms as they arise." (AR 339, 342.)[3] After the April 30, 2018 examination, however, there is no other instance of Marilyn G.D. reporting symptoms of depression, no formal diagnosis of depression, or prescribed treatment for depression.

The ALJ's failure to make a finding as to Marilyn G.D.'s mental impairments at step two, standing alone, would not necessarily warrant remand, because it would not necessarily affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *see also Keens v. Kijakazi*, No. 4:20-CV-2135, 2022 WL 635540, at *7 (M.D. Pa. Feb. 8, 2022), *report and recommendation adopted*, No. 4:20-CV-02135, 2022 WL 626771 (M.D. Pa. Mar. 3, 2022); *Snedeker v. Colvin*, No. 3:13-CV-970, 2015 WL 1126598 at *7 (N.D. N.Y. Mar. 12, 2015) (internal citations omitted); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). The record does not suggest that Marilyn G.D.'s alleged mental impairments rose to a clinical level or limited her ability to work. *See generally Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140,

---

[3] The report also stated that Marilyn G.D. was not suicidal and refused referral to a psychologist, choosing instead "to pray for assistance." AR 342.

145 n.2 (3d Cir. 2007) (harmless error). Because I am remanding on other grounds, however, the ALJ should make an explicit Step Two finding as to mental health conditions.

### B. The ALJ's Step Three Evaluation

The ALJ found that Marilyn G.D. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (AR. 18.) Marilyn G.D. asserts that the ALJ erred at step three because: (1) the ALJ failed to meaningfully consider the effects of her obesity on her other impairments and her general ability to work; and (2) the ALJ improperly evaluated the medical evidence resulting in findings that are not supported by substantial evidence. (Pl. Br. at 14-28.)

Step three is a screening process that permits an award of benefits without further analysis; a negative finding at step three simply means that the remaining steps must be performed and the applicant's capacity for work evaluated. At step three, the Third Circuit "requires the ALJ to set forth the reasons for [his or her] decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d. Cir. 2000). However, the ALJ is "not require[d] to use particular language or adhere to a particular format in conducting [that] analysis." *Holley v. Colvin*, 975 F. Supp. 2d 467, 476-77 (D.N.J. 2013) (internal citations omitted), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). Rather, the "ALJ satisfies this standard by 'clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing.'" *Id.* at 120 (citing *Scatorchia v. Comm'r of Soc. Sec.*, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

With respect to obesity, the ALJ stated that he evaluated obesity pursuant to SSR 19-2p and considered the impairment "in the context of the

overall record evidence." (AR. 18.) Marilyn G.D. argues that the ALJ "failed to properly assess [her] obesity as required." (Pl. Br. at 15.)[4]

Pursuant to SSR 19-2p, while obesity is no longer a separate listing, it can be a medically determinable impairment when it is established by objective medical evidence from an acceptable medical source. SSR 19-2p. Obesity can also be classified as a severe impairment "if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." *Id.* Under SSR 19-2p, the ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)." *Id.* However, the ruling also notes that "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment" and that the ALJ will "evaluate each case based on the information in the case record." *Id.*

At step two, the ALJ found that Marilyn G.D.'s obesity was a severe impairment. (AR. 17.) Then, in making his step three determination, the ALJ stated that he evaluated her obesity pursuant to SSR 19-2p and fully considered her obesity in light of the record evidence. (AR. 18.) This cursory step three discussion of Marilyn G.D.'s obesity fails to sufficiently address whether her obesity compounds her other impairments.

The Third Circuit has held that "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In *Diaz*, while the ALJ found that the claimant's obesity was a severe impairment, the Third Circuit noted that the ALJ "failed to consider its impact, in combination

---

[4] Here, plaintiff cites SSR 02-1p, but SSR 19-2p applies to all Social Security applications filed on or after May 20, 2019, and pending before the agency on or after that date. SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019). As Marilyn G.D.'s application was still pending as of May 20, 2019, SSR 19-2p applies to this appeal.

13

with her other impairments, at step three, as required." *Id.* at 503.[5] Therefore, the Court held that "absent analysis of the cumulative impact of [the claimant's] obesity and other impairments on her functional capabilities," the Court cannot adequately review the ALJ's decision. *Id.* at 504.

Here, as in *Diaz*, the ALJ West committed error due to his failure to explicitly discuss Marilyn G.D.'s obesity—either alone or in combination with her other impairments. True, ALJ West did make a "bottom line" finding as to Marilyn G.D.'s physical limitations, as demonstrated by the subsequent steps of his analysis. Notably, in assessing Marilyn G.D.'s RFC at step four, ALJ West noted that Marilyn G.D. (1) "did not allege any functional limitations", (2) walked with a normal unassisted gait and station, and (3) had no difficulty performing transfers." (AR. 22.) Still, it is unclear how due consideration of obesity would have changed the outcome of the ALJ's analysis at step three.

I will remand for specific findings as to the effect of obesity. In doing so, I do not mean to constrain the ALJ's discretion to make such findings as may be appropriate.

### C. The ALJ's Step Four Evaluation
#### 1. RFC Determination

Marilyn G.D. challenges ALJ West's consideration of her subjective complaints, arguing that the ALJ improperly minimized her impairments. According to Marilyn G.D., the ALJ's finding that that the record is inconsistent with her "statements about the intensity, persistence, and limiting effects of … [her] symptoms" is an error. (Pl. Br. at 17-18.) Because the court is remanding for further findings, the RFC may be altered, so I give no detailed consideration to what may be a moot point.

---

[5]     The ALJ relied on SSR 00-3p, which provides that a claimant's obesity should be considered on an individualized basis, with a focus "on the combined effect of obesity and other sever impairments afflicting the claimant." *Diaz*, 577 F.3d at 503 (quoting SSR 00-3p).

14

In general, however, I note that the ALJ was not required to take the claimant's subjective complaints at face value. Nor was he required to give controlling weight to the State Agency physician's check-box finding of "yes" when asked whether Marilyn G.D.'s statements regarding "the intensity, persistence, and functionally limiting effects of the symptoms" were substantiated by the objective medical evidence. I further note that the ALJ and the State Agency came to the exact same RFC determination that Marilyn G.D. now appeals. The ALJ properly cited medical evidence as a basis for discounting subjective complaints and contrary evidence regarding spinal complaints; musculoskeletal complaints; and hyperthyroidism. (AR. 21, 508, 514)

### 2. SSR 18-3P

Finally, Marilyn G.D.'s argument that the ALJ violated SSR 18-3p by discussing Plaintiff's treatment options for her impairments and purported non-compliance to prescribed treatment is unpersuasive. (Pl. Br. 18-19.) SSR 18-3p "provide[s] guidance on how [SSA] appl[ies] our failure to follow prescribed treatment policy in disability … claims under title II and XVI of the Social Security Act." SSR 18-3p, 2018 WL 4945641, *1. Pursuant to SSR 18-3p, an ALJ must determine whether a claim has failed to follow prescribed treatment when:

1. The Individual would otherwise be entitled to benefits based on disability or eligible for blindness benefits under titles II or XVI of the Act;
2. We have evidence that an individual's own medical source(s) prescribed[ ] treatment for the medically determinable impairment(s) upon which the disability finding is based; and
3. We have evidence that the individual did not follow the prescribed treatment.

*Id.* at *2. All three conditions must be established before the ALJ is obligated to determine whether the claimant failed to follow the prescribed treatment is

15

triggered. *Id.* Here, the first condition was not met because ALJ West did not find that Marilyn G.D. "would be found disabled *but for* [her] unjustifiable noncompliance with prescribed treatment." *Ginn v. Saul*, No. CV 19-12323, 2020 WL 7890734, at *11 (E.D. La. Nov. 2020), *report and recommendation adopted*, 2021 WL 40185 (E.D. La. Jan. 5, 2021). Far from it; as demonstrated by the substantial evidence, the ALJ merely noted Marilyn G.D.'s noncompliance with prescribed treatments among other medical evidence in determining her RFC. Accordingly, there was no violation of SSR 18-3p. *See, e.g., Ginn*, 2020 WL 7890734, at *11; *Dennis Cordelle B. v. Saul*, No. 20-CV-0515 (NEB/HB), 2021 WL 1321355, at *6 (D. Minn. Jan. 28, 2021), *report and recommendation adopted sub nom.*, 2021 WL 1138304 (D. Minn. Mar. 25, 2021); *Payne v. Saul*, No. 19-CV-1206-SCD, 2020 WL 4015609, at *5 (E.D. Wis. July 16, 2020); *cf. C.T. v. Comm'r of Soc. Sec.*, No. CV 20-03674 (RBK), 2021 WL 4398663, at *12 (D.N.J. Sept. 27, 2021) ("SSR 18-3p and its predecessor, SSR 82-59, apply only after a disability determination is made.")

### D. The ALJ's Step Five Determination

Marilyn G.D. argues that the ALJ failed to properly support his step five determination and improperly relied on the GRIDS in determining that she could perform jobs in the national economy. (Pl. Br. at 20-22.) Once again, I will not devote substantial discussion to an issue that may be mooted on remand. The ALJ retains the discretion to make a Step Five determination, using a vocational expert if appropriate.[6]

---

[6] Where a claimant has only exertional limitations the Commissioner may use the Grids to determine whether such work exists. The Grids set forth various combinations of age, education, work experience and RFC, and direct a finding of disabled or not disabled for each combination. See 20 C.F.R. Part 404, Subpt. P, App. 2. An ALJ "may rely on these grids to establish that jobs exist in the national economy that a person with the claimant's exertional limitations could perform." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). However, this applies only to exertional limitations; where the claimant has nonexertional limitations, the grids provide only a framework, and the ALJ must consider additional evidence to determine whether there are jobs in the national economy that someone with the claimant's combination of impairments

16

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is reversed and remanded in accordance with this opinion.

A separate order will issue.

Dated: March 22, 2022

/s/ Kevin McNulty

---

**Hon. Kevin McNulty**
**United States District Judge**

---

could perform. *Id.* at 270; *see also Allen v. Barnhart*, 417 F.3d 396, 404 (3d Cir. 2005). The remand here potentially implicates nonexertional impairments.

17